## KALLANDER *v.* NEIDHOLD.

PAYMENT—SATISFACTION OF JUDGMENT.

In a suit by the indorser of a promissory note to restrain the enforcement of a judgment thereon, it appeared that the maker of the note had given a check to the attorney for the judgment creditor for the amount of the judgment, against a fund deposited for that express purpose, and had received from him the note upon which the judgment was rendered, with the indorsement, "Paid by check;" that the check was dishonored upon presentation, because a third person, whom the attorney had informed of the deposit, had presented a check theretofore disallowed, and had obtained the fund. It further appeared that the person obtaining the money was the real party in interest in the original suit, and that the attorney was 'of his selection. *Held*, that collection of the judgment should be restrained.

Appeal from Gogebic; Haire, J. Submitted February 4, 1897. Decided April 27, 1897.

Bill by Martin Kallander and another against Charles Neidhold and others to restrain the enforcement of a judgment. From a decree dismissing the bill, complainants appeal. Reversed.

*Button & Norris*, for complainants.

*C. E. Miller*, for defendants.

LONG, C. J. This bill was filed to restrain defendants from assigning a certain judgment, or from enforcing its payment. The cause was in this court on demurrer to the bill at the January term, 1894, the demurrer overruled, the case remanded, and defendants permitted to answer. It is reported in 98 Mich. 517. All the defendants except Ehrmanntraut filed a general and several answer, and the case was brought to hearing upon proofs taken in open court. Upon the hearing the bill was dismissed. The complainants appeal.

It appears in the case that on May 20, 1892, Peter Ehrmanntraut gave defendant Nast two promissory notes to his order, each for the sum of $200, and each bearing the indorsement of the complainants as sureties. These notes were due, respectively, in two and three months from date, and both were indorsed by William Nast also. Suit was brought upon the three months' note by defendants Neidhold Bros., and, shortly after, suit was brought upon the two months' note by the same parties. Nast was not made defendant in these suits, by direction of Neidhold Bros. Defendant Miller was the attorney for the plaintiffs in those suits. The suit on the three months' note was adjourned to October, 1892, and in the meantime Ehrmanntraut paid the two months' note. Judgment thereafter was taken upon the three months' note. It appears also that Ehrmanntraut was indebted to Nast at this time in quite a large amount, which was unsecured. On October 15, 1892, Ehrmanntraut deposited $412 in the First National Bank of Bessemer, out of which he intended to pay the judgment and some other accounts.

Immediately after making the deposit, Ehrmanntraut started for Ironwood, to see defendant Miller for the purpose of paying the judgment. Miller calculated the amount due, and received a check for it from Ehrmanntraut upon the bank at Bessemer, and indorsed upon the note the words, "Paid by check. C. E. Miller, Attorney," and delivered it to Ehrmanntraut. This was on Saturday. Sometime prior to that, Ehrmanntraut had given Nast a check for $200 upon the same bank, which Nast had presented, and payment had been refused. It further appears that Miller was the general attorney for Nast in reference to all his business, and that the Neidhold brothers, in bringing suit upon the notes, consulted Nast as to the attorney they should employ, and were advised to employ Miller. The Neidholds lived at Wakefield, and, under Nast's directions, put the notes into Miller's hands, with instructions not to make Nast a party to the suit, though he was one of the indorsers on the notes. Upon the return day of the first suit, Ehrmanntraut and Kallander applied to Miller for an adjournment, and, as they claim, Miller referred them to Nast. This, however, is denied by Miller. The suits were adjourned without consulting with the Neidhold brothers. On the next Monday morning, after Ehrmanntraut gave the $200 check to Miller, Miller and Nast took the train for Bessemer, arriving there about 8:45 in the morning. Prior to their going, Miller had told Nast of the check he had received from Ehrmanntraut; that Ehrmanntraut had exhibited to him his bank book, showing the deposit made in the bank on that day. On arriving at Bessemer, Miller went to the hotel, and waited until about 15 minutes after time for the bank to open,—which was at 9 o'clock,—and, when he presented the check at the bank, was advised by the bank official that Nast, only a few moments before, had presented his check theretofore dishonored, and the bank had paid it, so that there was no money remaining to pay the Miller check. These facts are not much in dispute. It is admitted by Miller

that he told Nast of the deposit of these moneys, and it was also admitted by him that he was, and had been for some time, the general attorney for Nast, and that he had been directed by the Neidhold brothers not to make Nast a party defendant to the suits on the notes. Ehrmanntraut claims that Miller received the check in payment of the judgment, and agreed to discharge the judgment on the day he received it; while Miller contends that he was not to discharge the judgment until the check was paid.

The complainants were sureties upon the note, and the claims by their bill are:

1. That the transfer of the note from Nast to Neidhold Bros. was without consideration, and that Nast was the real party in interest in the judgment, and that this fact was within the knowledge of Miller.

2. That Miller accepted the check in satisfaction of the judgment.

3. That Miller advised with Nast to present his (Nast's) check first, so that he might be paid upon his dishonored check, intending therewith to collect the judgment against the complainants, who were sureties upon the note.

4. That the Neidhold brothers, Miller, and Nast conspired and confederated together with the intention of securing to Nast the payment upon his check, while knowing the rights of complainants, and were intending to cheat and defraud them.

5. That Miller and Nast both knew, according to the undisputed evidence, that Ehrmanntraut had deposited the money in the bank for the purpose of paying this judgment, and that Miller had received the check for that purpose.

All the above claims are denied in the answers. None of the defendants were sworn in the case except Nast and Miller, aside from Ehrmanntraut, against whom the bill was taken as confessed, and who was called as a witness by the complainants.

We are satisfied that the court below was in error in dismissing complainants' bill. It appears to us that the transfer of the note to the Neidhold brothers was for

·the purpose of bringing suit, though Nast was the real owner, as they took no part whatever in the suits after directing Miller not to make Nast a party; and the facts and circumstances as shown by the record satisfy us that Miller must have known all the facts, and communicated to Nast the deposit of the money in the bank, and given him the opportunity to present his check first, thus leaving no money for the payment of the Miller check. The money was deposited in the bank by Ehrmanntraut to pay this judgment. Nast and Miller both knew it, and the moneys should be thus applied. Any further statement of the case is unnecessary, as from all the surrounding circumstances we think the complainants are clearly entitled to be protected.

The decree of the court below will be reversed, and a decree entered in this court in favor of complainants, restraining the collection of the judgment, and also restraining the assignment of it, as prayed in the bill. The complainants will recover their costs of both courts against all the defendants except Peter Ehrmanntraut, who appears to have acted in good faith in attempting to pay the judgment.

The other Justices concurred.